```
 1                 UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                     JACKSONVILLE DIVISION

 3   UNITED STATES OF AMERICA,        Jacksonville, Florida

 4            Plaintiff,              Case No. 3:17-cr-58-J-39JBT

 5   -vs-                            Monday, January 22, 2018

 6   VERDELL TERRIA JONES,            4:03 p.m.

 7            Defendant.              Courtroom 12C
     _____

 8

 9       TRANSCRIPT OF CRIMINAL PRETRIAL/STATUS CONFERENCE
             BEFORE THE HONORABLE BRIAN J. DAVIS
10                 UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21   OFFICIAL COURT REPORTER:

22       Shelli Kozachenko, RPR, CRR
         221 North Hogan Street, #185
23       Jacksonville, FL  32202
         Telephone:  (904) 301-6842
24
                          (Proceedings reported by stenography;
25                             transcript produced by computer.)
```

1                    A P P E A R A N C E S

2

3    FOR THE GOVERNMENT:

4        **Kevin Frein, Esquire**
         United States Attorney's Office
         300 North Hogan Street, Suite 700

5        Jacksonville, FL  32202

6

7    FOR THE DEFENDANT:

8        **Verdell Terria Jones, Pro Se**
         c/o Courtney Browning

9        1780 Leon Road, Apartment 2212
         Jacksonville, FL  32246

10

         **Mark Rosenblum, Esquire, Standby Counsel**

11       Federal Defender's Office
         200 West Forsyth Street, Suite 1240

12       Jacksonville, FL  32202

13

14

15

16

17

18

19

20

21

22

23

24

25

1    P R O C E E D I N G S

2    Monday, January 22, 2018                          4:03 p.m.

3                          -  -  -

4            THE COURT:  All right.  Court will come to order.

5            We're collected this afternoon in connection with

6    United States of America versus Verdell Jones, Case No.

7    3:17-cr-58.

8            Ms. Jones, if you would come forward, please.

9            The government is represented today by Mr. Frein, who

10   is present.  He has with him -- I believe it's Tom Simon with

11   the FBI.

12           AGENT SIMON:  Yes, sir.

13           THE COURT:  Welcome to you-all.

14           Mr. Rosenblum is also present, the record should

15   reflect --

16           MR. ROSENBLUM:  Good afternoon, Your Honor.

17           THE COURT:  -- as standby counsel.

18           We are here for a status conference and pretrial of

19   sorts.  The matter's currently set for trial.  There was

20   pending, however, at our last hearing a motion that was served

21   close in time to the hearing.  The government had not had an

22   opportunity to review it.

23           It is the motion for miscellaneous relief,

24   specifically the right to subrogation and a challenge to the

25   jurisdiction of the Court that was filed by Ms. Jones.

1        Mr. Frein, have you had an opportunity to consider

2   that motion now?

3        MR. FREIN:   Judge, I have, and while we're on that

4   topic, shortly before coming to the courtroom, I received an

5   ECF of an additional motion that had been filed with exhibits

6   attached to that.

7        Judge, the argument, which I think has been repeated

8   in most of my responses to the defendant's motions, is the

9   same, that the motion should be dismissed or, alternatively,

10  denied.

11       The defendant really supports none of the arguments

12  with any form of legal authority.  While I'm certainly not an

13  expert in the arena of insurance litigation, subrogation, that

14  type of theory is generally in the insurance industry where one

15  may make a claim on an insurance policy if they somehow were

16  one of the parties to it although not directly affected.

17       It seems to be, whatever Ms. Jones' view of the

18  federal judicial system is, that her belief, under the Moorish

19  Sect, is that subrogation has something to do with her criminal

20  case.

21       And the position of the United States is it has

22  absolutely nothing to do with any of the matters that are

23  before the Court, nor any of the matters that will be before a

24  jury once they are sworn.

25       That's it, Your Honor.

1          THE COURT:   Ms. Jones, do you wish to offer any

2    argument?

3          Let me ask you, Mr. -- before -- Ms. Jones, just a

4    moment.

5          You referenced the submission, Ms. Jones' submission,

6    of some additional motions.

7          Was your argument in response to those motions as

8    well, or do you need some additional time to consider these

9    numerous --

10          MR. FREIN:   Judge, I did -- the one that was filed

11    today docketed at document 129, for the record, and then 129-1

12    are the exhibits that accompany that, I think that argument is

13    basically the same.  However, I would note in this motion,

14    there is a sense or an underpinning, Your Honor, that the

15    motion to dismiss at 129 deals directly with her conditions of

16    bond.

17          And the sort of current that runs through it is that

18    whatever message or whatever she is trying to accomplish, I

19    think it needs to be reiterated that certainly when His Honor

20    Magistrate Judge Toomey went over the conditions of release,

21    they are certainly still binding on Ms. Jones, and they will

22    remain binding until and when this case is resolved in whatever

23    fashion that may be.

24          But, yes, the same argument would apply in that

25    whatever is exactly meant by the motion to special deposit and

1 | the reference to Florida Rule of Civil Procedure, it, again,

2 | fails to comply with the local rule, at a minimum, but really

3 | doesn't provide any type of legal argument and seems to be a

4 | continuation of her statements regarding her belief in the

5 | Moorish Sect, the sovereign citizen movement, or whatever

6 | ideology that she is following as it's outlined in this motion.

7 | THE COURT:  All right.  Thank you, Mr. Frein.

8 | Ms. Jones, do you wish to be heard with respect to

9 | either the earlier motion, document 125, which is your motion

10 | to right to subrogation and challenge of jurisdiction, or with

11 | respect to your recently filed motion, sworn motion, to

12 | dismiss?

13 | Motion to special deposit is how it is captioned, but

14 | it's document 129.  And as Mr. Frein mentioned, it has some

15 | attachments to it.

16 | MS. JONES:  Okay.  On the motion to dismiss, first of

17 | all, I just want to say thank you, and I pray that the Court

18 | understand I'm not sovereign -- I'm not a sovereign citizen.

19 | I'm not under that Moorish movement, what he speaking about.

20 | I'm a bond servant for the Lord.

21 | THE COURT:  I'm sorry.  You're a what?  I didn't hear

22 | you.

23 | MS. JONES:  I'm on bond service for Yah.  I serve

24 | Yah.  I don't -- I'm not a Moore.  I'm not a sovereign citizen,

25 | none of that.

1        THE COURT:  All right.

2        MS. JONES:  My heavenly father is Yah.

3        And my thing is I sinned against my father by

4   participating in this here movement --

5        THE COURT:  But you --

6        MS. JONES:  -- participating like with the courts and

7   the -- and the -- the -- the living in the spirit, put it like

8   that.

9        This here -- this here motion to dismiss on the --

10  the one where he was speaking about the Moorish movement, it's

11  about -- the -- in the first with Judge Toomey, when I brought

12  up the first issue with the bond, he -- he -- and the clerk

13  gave me a paper that day saying that there was no bond.

14       And I knew it was a bond because when you making a

15  commitment to come in here -- I'm under duress here because I

16  was taken out of my bed at 5:55 a.m.  I was not served no

17  paperwork to come to court.

18       Tom came in my house under the pretense as Kevin

19  Frein.  I forgive him for that.  He snatched me out the bed to

20  come in here.  I was not served.  He came to my house on

21  October the 4th with a piece of paper stating that I was under

22  investigation, that he was going to bring the documents back.

23  He never did.  But I forgive him for that.

24       But my thing is, it is a bond.  Everything is dealing

25  with bond because of what we're up under, which is bankruptcy.

1   The United States is up under bankruptcy.

2            And everything is hindered on insurance [verbatim],

3   where Mr. Frein stated he know nothing about that, but

4   everything is up under assurance.  Not insurance, assurance,

5   which is -- we're up under war.  There's a spiritual war going

6   on with this flesh and the spirit.

7            So saying all of that, this will take us back to the

8   motion for not being dismissed.  It was paid because I signed

9   jointly with the spirit and the flesh.  I signed that document

10  under duress, not knowing fully well what I was reading and --

11           THE COURT:  What document -- what document did you

12  sign under duress?

13           MS. JONES:  When Mr. Haskell came and spoke to me,

14  that was my first time meeting him outside of the --

15           THE COURT:  Mr. who?

16           MS. JONES:  With the bond, the paperwork.  April the

17  13th.  April the 13th.

18           THE COURT:  Mr. Rosenblum?

19           MR. ROSENBLUM:  I think Ms. Jones is referring to Jim

20  Haskett, who works for pretrial services.

21           MS. JONES:  The paperwork that you sign.

22           THE COURT:  All right.

23           MS. JONES:  So -- and that was put -- put me up under

24  obligation to pay the United States of America the $10,000.

25           THE COURT:  What is this -- does Ms. Jones have a

1  bond currently set?

2          MS. JONES:  Correct.

3          THE COURT:  I'm asking the government.

4          MR. FREIN:  Ms. Jones has a signature bond in the

5  amount of $10,000, Your Honor, as one of her conditions of

6  release.

7          THE COURT:  Okay.  So is this -- tell me what you

8  understand.

9          Let's assume for a moment that you have $10,000 in a

10 registry of the court --

11         MS. JONES:  Okay.

12         THE COURT:  -- because it appears that your motion is

13 looking to achieve that, from what the clerks tell me about

14 moneys received.  Let's assume that you have $10,000 in the

15 registry of the court.

16         What do you think that's going to accomplish?

17         MS. JONES:  That's the agreement that I signed saying

18 that I would pay the United States of America --

19         THE COURT:  That agreement -- and I don't have it in

20 front of me, but it likely said that you would pay them if you

21 didn't appear, that you would lose $10,000 in value if you

22 didn't show up for court.

23         MS. JONES:  Okay.

24         THE COURT:  So it -- you've been showing up for

25 court.

1      MS. JONES:  Correct.  Correct.

2      THE COURT:  So what is it that you want the Court to

3  do, given this motion?  I'm not quite sure I understand it.

4      MS. JONES:  Okay.  Well, the motion is if you -- if

5  you owe a debt, pay the debt.

6      THE COURT:  Right.

7      MS. JONES:  So since there is no legal way to pay the

8  debt under -- because there's no silver and gold, so what I did

9  was I had people to donate the funds to the registry.

10     THE COURT:  Yeah, I'm with you.  I understand you're

11 trying to get $10,000 into the court's registry to pay.

12     And if you pay, what do you believe should happen?

13     MS. JONES:  Okay.  Now, for the money being in the

14 registry so that that would be taken care of for the United

15 States of America.

16     THE COURT:  So are you under the impression that if

17 you pay $10,000, the government will have its obligation

18 satisfied and therefore you will not face criminal charges,

19 that these charges that are in the indictment will be

20 dismissed?

21     Is that what you are believing?

22     MS. JONES:  No, no, no.  Sir, on the charges for the

23 bond, the bond will be taken care of --

24     THE COURT:  Okay.

25     MS. JONES:  -- because I signed the document under

1   obligation not knowing that I was to pay the United States of

2   America.

3          THE COURT:  All right.  Well, I think you may have

4   misunderstood what that obligation was about, and because you

5   have been appearing in court --

6          MS. JONES:  Uh-huh.

7          THE COURT:  -- the issue of the bond is not important

8   to the government or to the Court right now.

9          MS. JONES:  Okay.

10         THE COURT:  And let me suggest it shouldn't be

11  important to you, because you have been coming to court.

12         MS. JONES:  Okay.

13         THE COURT:  What is important is that we're set for

14  trial on the charges that have been brought by the government,

15  that we're scheduled to begin a trial -- what date?

16         MS. JONES:  The 12th.

17         THE COURT:  Remind me, Madam Clerk.

18         COURTROOM DEPUTY:  February 12th.

19         MS. JONES:  The 12th, the 12th.

20         THE COURT:  February 12th.

21         MS. JONES:  Uh-huh.

22         THE COURT:  So I'm going to -- I'll treat this motion

23  that you have filed as -- it should be dismissed without

24  prejudice because of a number of reasons.  One is that it

25  appears to be addressing, or at least attempting to address, an

1  issue that is presently moot by virtue of the fact that you

2  have been appearing in court.

3       If that's not its purpose -- because it's difficult

4  to understand its purpose from its reading -- then it should be

5  dismissed because it's -- there is no authority cited for it.

6       MR. ROSENBLUM:  Sorry, Your Honor.  I didn't mean to

7  interrupt.  I just wanted to make sure Ms. Jones was okay

8  because of her history of fainting.

9       THE COURT:  Yes, ma'am.  Are you okay, Ms. Jones?

10      MS. JONES:  Yes.  Yes, sir.

11      THE COURT:  Are you sure?  Do you need to sit down?

12      MS. JONES:  No.  I just -- I just want to get an

13 understanding, make sure we're on the same page.

14      What -- I just have a question.

15      THE COURT:  Okay.

16      MS. JONES:  Under the word, God's law, as a natural

17 person in court, what is that interpretation?

18      THE COURT:  You know, I'm really -- I'm not a

19 theologian, and I can't give you legal advice --

20      MS. JONES:  Yeah, I --

21      THE COURT:  -- but -- no.  And I'm not familiar with

22 your faith.

23      MS. JONES:  Okay.

24      THE COURT:  Is it -- you say Yahweh?

25      MS. JONES:  Yah.

1          THE COURT:  Yah.  I'm not familiar with that faith.

2          MS. JONES:  Okay.

3          THE COURT:  There is, in the Christian faith, a

4 distinction between Biblical law and civil law --

5          MS. JONES:  Okay.

6          THE COURT:  -- and/or criminal law.  There's a

7 distinction.  And what I hear you making argument to me about

8 is the laws that apply to your faith.

9          Those are not the laws that are operative in this

10 court.  These are laws established by the United States

11 government and are recognized as applicable to and for the

12 benefit of the people who are citizens of this country, which

13 you are.

14          MS. JONES:  No.

15          THE COURT:  Do you understand, Ms. Jones, that this

16 indictment that was filed charges you with a crime and that --

17          MS. JONES:  Yes.  Yes, sir.

18          THE COURT:  You understand that?

19          MS. JONES:  Yes, sir.

20          THE COURT:  And that you have chosen to represent

21 yourself and defend yourself?

22          MS. JONES:  Yeah.

23          THE COURT:  Do you need to sit down?

24          MS. JONES:  Woo.  Yeah, I'm --

25          MR. ROSENBLUM:  Why don't you sit down.

1    THE COURT:  Why don't you sit down.  Sit down,

2  Ms. Jones.  I don't want you to faint again.

3    MR. ROSENBLUM:  Here.  You can talk from here.

4  There's a microphone right here.

5    MS. JONES:  Yeah.  I'm just saying on the -- in the

6  legal process on the word -- that's all.  I just want to

7  understand, because I'm not a United States citizen.

8    If you read that document from the DOJ that I've put

9  in there -- it's under evidence -- it tell you I'm a private --

10  a private citizen, not a United States citizen.  There's a

11  difference between the two.

12    MARSHALL:  Come on and sit down, ma'am.  Sit down in

13  this chair here.

14    MS. JONES:  I just want him to hear me.

15    THE COURT:  I'm able to hear you, Ms. Jones.  You can

16  sit down.

17    MS. JONES:  Wait a minute.

18    MR. ROSENBLUM:  Right here.  There's a microphone

19  right here.

20    MS. JONES:  Wait a minute.

21    MR. ROSENBLUM:  Okay.

22    MS. JONES:  See, under the -- thank you.  Thank you.

23    I pray -- I pray this -- oh, boy.  I'm sorry about

24  that.

25    THE COURT:  No.  I'm going to give you a moment to

1   collect yourself, and we'll try to continue this hearing today.

2          MS. JONES:  Yes, sir.

3          THE COURT:  Are you currently taking any medication,

4   Ms. Jones?

5          MR. ROSENBLUM:  She says she needs some candy, maybe

6   something with some sugar in it, Your Honor.

7          THE COURT:  Is this her daughter in the courtroom?

8          Is she taking any medication now?  Come forward,

9   ma'am.

10         Does somebody have some candy?

11         Is your mother diabetic?

12         MS. BROWN:  Not diabetic but hypoglycemic.

13         THE COURT:  So she's --

14         MS. BROWN:  That -- she's -- right now she's having a

15  seizure.

16         THE COURT:  She's what?

17         MS. BROWN:  She's having a seizure right now.  If she

18  was standing up, she would have passed out.

19         THE COURT:  Can you come assist her, I mean, if you

20  know how to assist her, or do I need to call 911 for her again?

21         MS. BROWN:  Mama.

22         Did she take -- did she take the anxiety medicine?

23         She took -- she has anxiety.  She took the anxiety

24  medication, and sometimes it makes her go into this stage.

25         THE COURT:  And so what -- did you give her

1  something?

2          MS. BROWN:  She ate a piece of chocolate, but she

3  usually needs, like, a peppermint or something so the sugar

4  will go faster than a piece of chocolate.

5          THE COURT:  And do you have any with you --

6          MS. BROWN:  No.

7          THE COURT:  -- or does she have any with her?

8          MR. ROSENBLUM:  Melvin has some.

9          THE COURT:  Oh, okay.  A piece of peppermint?

10         MR. ROSENBLUM:  Want a peppermint?

11         THE COURT:  Take your time, Ms. Jones.  We don't need

12 to rush.  I want you to be fully rested and aware as we go

13 forward, so take a moment to collect yourself.

14         MS. JONES:  I'm ready.  I'm ready, Your Honor.

15         THE COURT:  All right.  I'm going to give you a few

16 more minutes.  You still appear to be a little weak.

17         So sit back, try to relax for a moment.

18         MS. JONES:  On the motion for (unintelligible), I

19 pray (unintelligible) . . .

20         Okay.  Okay.

21         THE COURT:  Are you feeling better?

22         MS. JONES:  Yes, Your Honor.

23         THE COURT:  Tell me about the condition you suffer

24 from.

25         MS. JONES:  I got --

1          THE COURT:  Give her a handheld microphone, please.

2          MS. JONES:  -- hypoglycemia.

3          THE COURT:  Excuse me just a moment.  No, no.

4    Ms. Jones, I'm going to give you a microphone so you don't have

5    to bend over.

6          Is that working?

7          COURTROOM DEPUTY:  Yes, sir.

8          MS. JONES:  Hypoglycemia.

9          THE COURT:  How long have you suffered from it?

10         MS. JONES:  It's -- it's been three years, because

11   that's part of the reason why I'm not working for JTA.

12         THE COURT:  Who treats you for it?  Do you have a

13   physician that treats you for it?

14         MS. JONES:  No.  I was -- no physician was treating

15   me for it.  Like, the rescue will take me to Shands or

16   Memorial.  And there's no medication to control hypoglycemia

17   because it's a low sugar.  It's a -- sugar drop too low.

18         She put me on metformin, and metformin even dropped

19   the sugar lower, so the lady that I'm seeing now, she told me

20   not to take it.

21         THE COURT:  So does -- have you found that stress

22   affects your blood sugar?

23         MS. JONES:  Definitely so.

24         THE COURT:  Okay.

25         MS. JONES:  Stress and the medication for the

1   anxiety.  That have a lot to do with it too.

2            THE COURT:  Okay.  Well, you seem to be alert and --

3            MS. JONES:  Yes.

4            THE COURT:  -- responsive now.

5            MS. JONES:  Yes.

6            THE COURT:  Do you feel like you can go on?

7            MS. JONES:  Yeah.  We can -- we can carry on.

8            THE COURT:  I have actually resolved all of the

9   motions that are pending before the Court, Ms. Jones, in my

10  pronouncements as we sit here today.  There are no other

11  motions pending.

12           And I was looking to get your attention directed to

13  our trial --

14           MS. JONES:  Okay.

15           THE COURT:  -- which is scheduled on the 12th, is it,

16  Madam Clerk?

17           COURTROOM DEPUTY:  Yes, sir.

18           MS. JONES:  February 12th.

19           THE COURT:  February 12th.

20           Are you ready for trial?

21           MS. JONES:  Yeah.  Yeah.  I --

22           THE COURT:  All right.  Do you understand the process

23  that we will be undergoing?

24           MS. JONES:  On the -- on the trial --

25           THE COURT:  Yes, ma'am.

1          MS. JONES:  -- starting February the 12th?

2          THE COURT:  The first thing that we'll do is pick a

3    jury.  You'll have to participate in that process.

4    Mr. Rosenblum will be here to assist you if you find that you

5    need assistance, but you need to familiarize yourself with the

6    rules that govern jury selection.

7          The government will have the burden of proof, so it

8    will get to put on evidence first.

9          And assuming that the charges aren't dismissed after

10   they have put on their case, you, if you choose, will have an

11   opportunity to put on evidence, including your testimony if you

12   choose.  You cannot be forced to testify, but if you choose to

13   testify, you can.

14         Do you understand that?

15         MS. JONES:  Yes, sir.

16         THE COURT:  Okay.  The government's ready to proceed

17   to trial?

18         MR. FREIN:  Judge, the United States is.

19         The -- as I believe I brought up at the last status

20   conference, it is my understanding that Ms. Jones did not want

21   to enter a plea.

22         We had drafted a plea agreement.  I believe

23   Mr. Rosenblum met with her.  And although it recommended a

24   nonincarcerative, below-the-guidelines recommendation to Your

25   Honor, she has declined to do that.  That's absolutely her

1   right.  That's fine.

2          I have prepared, with the assistance of other members

3   of the prosecution team, some stipulations regarding evidence

4   that I'll give to Mr. Rosenblum so that, if he's able to go

5   over them with Ms. Jones, that may speed up the calling of

6   witnesses, as I don't think many of the documents are really a

7   question here.

8          Your Honor, I will say I find myself in a bit of an

9   untenable situation.  Ms. Jones, like any other individual, is

10  certainly entitled to her beliefs.  I will say, though, her

11  earlier comments today seem very different than any other

12  before, and it causes me some concern about her mental state

13  right now.

14         While in all other pleadings and court statuses, she

15  seemed to say kind of what her beliefs are and they were all

16  consistent, but today there just seems to be, from my

17  perspective, more of a detachment from reality, talking about

18  that this is somehow related to bankruptcy.

19         And I understand that even an outpatient evaluation

20  would likely continue the trial.

21         Your Honor, can I have a moment just to talk to one

22  of my colleagues?

23         THE COURT:  Yes, you may.

24     (Brief pause.)

25         MR. FREIN:  Judge, based on what I've just explained

1   to the Court, at this time I would be moving for a competency
2   evaluation of Ms. Jones.
3        I would be moving for an out-of-custody evaluation,
4   meaning my office would work with Mr. Rosenblum and Ms. Jones
5   to ensure a convenient scheduling date wherein she could go and
6   meet with a doctor and be evaluated for her competency.
7        We did this at the beginning of the case, and it did
8   come back that she was competent.  But I just -- I have
9   concerns, based on her statements that she was making earlier
10  today, that something is now different.  And I question whether
11  or not she's understanding that, in fact, we are very clearly
12  going to trial in this case.
13       Thank you, Your Honor.
14       THE COURT:  Yes, ma'am, Ms. Jones.  You don't need to
15  stand up.  I'll hear from you from a seated position.
16       MS. JONES:  The mental competency, there's nothing
17  wrong with my mental.  It's just I -- I hate to be like this,
18  but I can't control the sugar.
19       I know what I'm -- I know what y'all talking about,
20  and I do understand the trial and stuff.  It's just I can't
21  control how -- how this illness affect me.
22       I know I look bad in y'all eyes, but this --
23       THE COURT:  No.  Bad isn't the right word.
24       What the government has suggested is that you don't
25  understand what's going on here.  And what you are saying is

1    that you do if you are healthy physically.  And the question

2    which is presented by that scenario is whether or not you are

3    physically -- your physical health is affecting your mental

4    health, and it can.  Low blood sugar and the like can affect

5    how well you understand things.

6              So it may be more of a question of a physical

7    condition affecting your mental competence.  And I don't know

8    that that was ever explored, to be quite honest with you.

9              MS. JONES:  Yes, sir.  We went -- we went to two

10   doctors.

11             THE COURT:  Yeah, but their emphasis was on your

12   mental state, was it not?

13             MS. JONES:  Yes, sir.

14             THE COURT:  Did they examine you physically?

15             MS. JONES:  No.  No.  She just did the verbal.  I

16   talked to a psychiatrist.

17             THE COURT:  All right.  I'm going to take your motion

18   under advisement, Mr. Frein.  I'll think more about it.

19             My thinking is that Ms. Jones knows what she's doing.

20   She has the faith that she believes is going to assist her in

21   establishing her defense in this case or perhaps will exonerate

22   her without a defense.  It's certainly a belief she's entitled

23   to.  I don't know that she does not understand the process.

24             I also believe that she is a -- either because of her

25   religious beliefs or because of her reliance on materials

1  outside of the usual sources of authority for matters pending

2  in United States courts, that she believes she may have

3  articulated defenses and properly moved this Court toward

4  certain actions that I have explained to her on several

5  occasions is simply not the case.

6          Whether her persistence in pursuing those kinds of

7  motions is evidence of her lack of competency or simply

8  persistence in a belief that is perhaps founded in a religious

9  faith, I don't have a way of knowing.

10         I do know that she appears to understand my rulings

11 and that she appears to understand the process that we are

12 engaging in and that you are obligated to prove her guilt

13 beyond and to the exclusion of a reasonable doubt.

14         So as I said, I'll take your motion under advisement.

15 In the meantime, we're going to remain set for trial on

16 February 12th.  Ms. Jones has indicated her readiness to go to

17 trial, as have you, with the exception of your motion, of

18 course.

19         Yes, sir, Mr. Rosenblum.

20         MR. ROSENBLUM:  Your Honor, could I just make one

21 observation?  And this may be presumptuous of me because I

22 don't represent Ms. Jones.

23         But one of the things that frustrates me is that --

24 and as the Court knows, there is actually a motion that can be

25 filed on behalf of a defendant which is a motion to abate the

1   proceedings.  That's rarely used and rarely granted, but it

2   occurs in cases where a person really can't make it through a

3   trial for various reasons.

4          And I think there once was a case in this district

5   where a person named Ira Koger had narcolepsy, and as a result

6   of the fact that he could not sit through a trial without

7   falling asleep and therefore could not participate as was his

8   right to do, his lawyers filed a motion to abate the

9   proceedings.  And that motion was ultimately granted by the

10  Court, and the proceedings were abated.

11         My concern, in just sitting here and watching all

12  this, is that if day one of the trial starts and Ms. Jones

13  reacts in the way that she has now on three separate occasions

14  before the court -- once in front of Judge Toomey and twice

15  before this Court -- by either fainting or coming close to

16  fainting, then I'm concerned that maybe this is a case where

17  these proceedings should be abated or at least that that

18  procedure should be explored.

19         If I represented her, seeing what I'm seeing, I would

20  file a motion to abate the proceedings and let the Court

21  decide.  What made me think of it was just the -- this being

22  the third time this happened and then what the Court said about

23  the fact that her previous examinations have been mental

24  examinations and not physical examinations.

25         So I just throw that out for whatever it's worth.  As

Case 3:17-cr-00058-BDJ-JBT Document 135 Filed 02/08/18 Page 25 of 26 PageID 690

1    I say, it's presumptuous of me because I don't represent her,

2    but I just throw it out as food for thought.

3            And, of course, if the Court, maybe over Ms. Jones's

4    protest, wanted to appoint me to represent her just for that

5    sole purpose of exploring the possibility of a motion to abate,

6    then I would certainly be willing to do that.  I don't know if

7    you can do that or not.

8            And I'm sorry if I'm unnecessarily complicating

9    things, but it just occurred to me that this is a case where

10   that procedure might ought to be explored.

11           THE COURT:  Okay.  Anything else?

12           Ms. Jones, anything else from you?

13           MS. JONES:  No, sir.

14           THE COURT:  Mr. Frein?

15           MR. FREIN:  No, Your Honor.

16           THE COURT:  Very good.  We're in recess.

17           I have a motion under advisement for a competency

18   examination, and we are set for trial February 12th.

19           Thank you.

20           COURT SECURITY OFFICER:  All rise.

21       (The proceedings were concluded at 4:40 p.m.)

22                              -  -  -

23

24

25

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4    UNITED STATES DISTRICT COURT )

5    MIDDLE DISTRICT OF FLORIDA    )

6

7              I hereby certify that the foregoing transcript is a

8    true and correct computer-aided transcription of my stenotype

9    notes taken at the time and place indicated therein.

10

11             DATED this 8th day of February, 2018.

12

13                                 s/Shelli Kozachenko_____
                                   Shelli Kozachenko, RPR, CRR
14                                 Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25